UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LYNNE E. S.-M.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C23-5765-MLP

ORDER

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her October 2016 and June 2019 applications for Supplemental Security Income ("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred in failing to reopen and adjudicate a prior March 2016 SSI application in conjunction with her October 2016 and June 2019 applications. (Dkt. #18 at 1 & n.1; dkt. # 27 at 2 n.1; dkt. # 32 at 2-3.) Additionally, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, her testimony, and the lay witness testimony, in assessing her residual functional capacity ("RFC"), and in finding that she was capable of her past relevant work. (Dkt. # 18 at 1.)

As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). [1]

## II.    BACKGROUND

Plaintiff was born in 1963, has a high school education, and worked most recently as a sales route driver. AR at 200, 2275. Plaintiff has not been gainfully employed since the October 13, 2016 date of her second SSI application.[2] *Id.* at 2246.

This case has a lengthy history. Plaintiff first filed for disability insurance ("DIB") and SSI benefits on March 2, 2016 ("first application"), alleging a February 29, 2012 onset date. *See* AR at 200-06. Plaintiff's applications were denied initially at the administrative level on June 30, 2016. *Id.* at 3746-70. It is unclear from the record whether Plaintiff requested reconsideration and/or a hearing following initial review of the applications.[3] In February 2017, Plaintiff requested reopening of the March 2016 application.[4] *Id.* at 275.

Plaintiff subsequently applied for SSI benefits on October 13, 2016 ("second application"), alleging disability beginning February 19, 2012. AR at 209-14. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

[2] The October 13, 2016 date used by the ALJ was simply the date that Plaintiff filed her second SSI application. However, the record shows that Plaintiff's last gainful employment dated back to 2012 or before – prior to an injury she suffered on the job in 2012. AR at 49-51, 2626, 2752.

[3] The only decision records regarding Plaintiff's March 2016 applications are those that the Commissioner submitted after this appeal was fully briefed, in response to the Court's order requiring supplementation of the record. *See* AR at 3746-70; *see also* dkt. # 28 (order requiring the Commissioner to supplement the record with the SSA's decision on Plaintiff's March 2016 SSI claim). Those records appear to include only the June 2016 administrative decisions on Plaintiff's SSI and DIB applications on initial review. *See* AR at 3746-70.

[4] Following the administrative denial of her second application in January 2017, in February 2017, Plaintiff filed a request with the SSA to "automatically reopen[]" her first March 2016 application and to amend the onset date of her second application. AR at 275.

97-20, 132-41. After an April 2018 hearing, in August 2018, ALJ Allen Erickson issued a decision finding Plaintiff not disabled ("2018 decision"). *Id.* at 12-96. Neither the SSA nor ALJ Erickson appear to have addressed Plaintiff's February 2017 request to reopen her first application. *See, e.g., id.* at 2319-29. In April 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision on Plaintiff's second application. *Id.* at 1-6.

In June 2019, Plaintiff appealed the decision regarding her second application to this Court. AR at 2342-43 (C19-5573-MLP, dkt. # 15). Soon thereafter, in July 2019, Plaintiff filed a third SSI application ("third application"). *Id.* at 2598. Plaintiff alleged an amended onset date of March 2, 2016. *Id.* at 2244. While Plaintiff's appeal before this Court (C19-5573-MLP) was pending, Plaintiff's third application was denied initially and on reconsideration at the administrative level in October 2019 and February 2020, respectively, and Plaintiff requested a hearing. *Id.* at 2410-37, 2531-33.

On March 26, 2020, this Court affirmed the Commissioner's final decision and dismissed the appeal with prejudice. AR at 2344-68 (C19-5573-MLP, dkt. # 15). Plaintiff subsequently appealed the Court's decision on the second application to the United States Court of Appeals for the Ninth Circuit. *Id.* at 2347-53. While Plaintiff's appeal was pending before the Ninth Circuit, in April 2021, the United States Supreme Court decided *Carr v. Saul*. *See* 593 U.S. 83, 85-93 (2021) (holding social security claimants are entitled to raise Appointments Clause challenges for the first time in district court, and there is no requirement that a claimant exhaust the issue in the administrative proceedings below).

Following the *Carr* decision, in June 2021, the Ninth Circuit subsequently vacated this Court's decision and judgment on the second application, and remanded with instructions that

the Court, in turn, remand the case to the SSA so that Plaintiff could obtain a new hearing before a different, properly appointed ALJ. AR at 2357. On June 23, 2021, the Court remanded the case involving the second application to the Commissioner in accordance with *Carr* and the Ninth Circuit's order. *Id.* at 2355-56.

Meanwhile, Plaintiff's third 2019 application continued to be adjudicated at the administrative level. On June 24, 2021, ALJ Malcolm Ross held a hearing on the third application. *Id.* at 2266-98. However, prior to any decision from ALJ Ross on the third application, on November 10, 2021, the Appeals Council ordered the consolidation of Plaintiff's second and third applications ALJ. *Id.* at 2372-73. The Appeals Council then remanded the consolidated second and third applications for a new decision before a new ALJ. *Id.*

In its remand order, the Appeals Council further found that ALJ Erickson's 2018 decision on Plaintiff's second application failed to adequately evaluate Plaintiff's RFC. AR at 2371. Specifically, the Appeals Council found that the ALJ's step two and step four findings regarding Plaintiff's "chronic kidney disease, status post melanoma requiring resection and reconstruction surgeries, degenerative changes of the cervical spine, hypertension and hyperlipidemia associated with diabetes mellitus, perforation of the right tympanic membrane with hearing loss, chronic sinusitis, vitamin D deficiency, and allergic rhinitis" were inconsistent. *Id.* at 2371-72. In support, the Appeals Counsel noted that in ALJ Erickson's step four RFC analysis, the ALJ afforded "significant weight" to a March 2017 opinion regarding Plaintiff's physical impairments from non-examining state agency physician, Dr. Louis Martin. *Id.* at 117, 2328. However, the Appeals Council noted that the ALJ simultaneously rejected Dr. Martin's opinion that several of Plaintiff's above listed impairments were severe. *Id.* Instead, in contradiction of Dr. Martin's opinion, the ALJ found the impairments were nonsevere because they "caused no

more than minimal resultant functional limitations." *Id.* at 2372; *see also id.* at 2321 (ALJ Erickson's pertinent step two findings).

The Appeals Council thus ultimately found that ALJ Erickson erred in failing to "include a narrative discussion explaining how [Plaintiff's] nonsevere impairments were considered in combination, or how the claimant's obesity was considered in determining the limitation." AR at 2372. The Appeals Council further noted that Dr. Martin's 2017 opinion was completed more than one year before the ALJ's 2018 decision and "before the majority of evidence in the record." *Id.* at 2372. On remand, the Appeals Council ordered the new ALJ to reconsider Dr. Martin's opinion and Plaintiff's RFC, and, in doing so, to obtain evidence from a medical expert ("ME"). *Id.* Additionally, the Appeals Council ordered the new ALJ on remand to give further consideration to Plaintiff's RFC, including specific references to evidence of record; to further evaluate the medical opinions; to reconsider whether Plaintiff was capable of her past work, and, if warranted, to obtain VE testimony and pose hypothetical questions to the VE; and to resolve any conflicts between VE testimony and the DOT and Selected Characteristics of Occupations. *Id.*

Subsequently, the consolidated second and third applications were assigned to ALJ Ross, who was, at the time, presiding over Plaintiff's third application. ALJ Ross held an October 2022 hearing on the consolidated second and third applications. AR at 2301-15. At that hearing, Plaintiff requested that ALJ Ross reopen her first March 2016 SSI application, and amend her alleged onset date to March 2, 2016. *Id.* at 2306, 2308.

On April 27, 2023, ALJ Ross issued a decision finding Plaintiff not disabled on the second and third applications. AR at 2243-59. In that decision, ALJ Ross declined Plaintiff's request to reopen her first March 2016 application, finding that "the record lacks new and

material evidence related to the period addressed in that determination." *Id.* at 2244. ALJ Ross thus considered Plaintiff's disability based on the October 13, 2016 filing date associated with her second application, and subsequently noted that while evidence "dated prior to October 13, 2016, [was] considered," he had only considered such record evidence as it related to the period on or after October 13, 2016. *Id.* at 2244, 2253; dkt. #23 at 4.

Using the five-step disability evaluation process, ALJ Ross found that for the period from October 2016 through the April 2023 decision, Plaintiff had the following severe impairments: lumbar spine and thoracic spine degenerative disc disease and degenerative joint disease, diabetic neuropathy, and obesity. AR at 2246. The ALJ subsequently determined that Plaintiff retained an RFC for light work with additional postural and environmental limitations. *Id.* at 2252. Relying on the testimony of a VE, the ALJ found that Plaintiff could perform her past work as a hotel/motel clerk. *Id.* at 2259. As a result, the ALJ concluded that Plaintiff was not disabled. *Id.*

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

1   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

2   Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

3   testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

4   1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

5   neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

6   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

7   rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

8   ## IV.    DISCUSSION

9   ### A.    Judicial Review of the ALJ's Discretionary Denial of Plaintiff's Request to
       Reopen her First SSI Application is Warranted under the Circumstances of
10      this Case

11           For the reasons discussed below, the Court finds that it has jurisdiction to review the

12   ALJ's failure to apply the correct legal standard in declining to reopen Plaintiff's March 2016

13   SSI application.

14           In her opening brief, Plaintiff argued that ALJ Ross erred in the legal standard utilized

15   because her prior first application could have been reopened "for any reason" under 20 C.F.R.

16   § 416.1488. (Dkt. # 18 at 2 n.1.) Plaintiff thus argued that the Court should consider the first

17   application *de facto* reopened. (*Id.*)

18           The Commissioner acknowledged in opposition that Plaintiff first requested reopening of

19   her March 2016 application in February 2017, and that "it may be true" that the first application

20   could have been reopened "for any reason" such that ALJ Ross erred in his application of the

21   wrong standard. (Dkt. # 23 at 2-3 n.1.) However, the Commissioner argued that, nevertheless,

22   the Court is unable to consider the ALJ's mistake of law because the decision not to reopen was

23

1    a discretionary decision. (*Id.*) The Commissioner further argued that the Court should reject

2    Plaintiff's argument that the ALJ *de facto* reopened the claim. (*Id.*)

3       Because the SSA's June 2016 administrative decision(s) on Plaintiff's first March 2016

4    application were missing from the record, the Court ordered the Commissioner to supplement the

5    record with those decisions, which he did. (Dkt. # 28; AR at 3746-70.) After review of the SSA's

6    June 2016 administrative decision on Plaintiff's first application, the Court found that ALJ Ross

7    indeed applied an erroneous legal standard in considering Plaintiff's request to reopen. (Dkt. # 30

8    at 1-2.) Specifically, given Plaintiff's February 2017 request to reopen her March 2016

9    application, the Court noted that ALJ Ross erred in requiring "new and material evidence" to

10   reopen the first application because pursuant to 20 C.F.R. § 416.1488(a), Plaintiff was "entitled

11   to reopening 'for any reason'" given that her initial February 2017 request to reopen was dated

12   "'[w]ithin [twelve] months of the date of the notice of the initial [June 2016] determination.'"

13   (*Id.*)

14      The Court thus ordered the parties to brief whether an exception to the rule against

15   judicial review of discretionary decisions applies in this case, and to address the appropriate

16   remedy in the event the Court determined that an exception applied. (Dkt. # 30.)

17       **1.**  **The ALJ's Decision Regarding Reopening was a Discretionary**
            **Decision Under 20 C.F.R. § 416.1488**

18      At the outset, the Court notes that in his supplemental brief, the Commissioner argues

19   that Plaintiff was not "entitled" to reopening under subsection (a) as suggested by the Court in its

20   briefing order. (Dkt. # 30.) The Court agrees that reopening was discretionary, and that in its

21   supplemental briefing order, the Court should have stated that Plaintiff "*may have been* entitled"

22   to reopening "for any reason." (*Cf. id.* at 2.) The controlling regulation, which governs the

23   conditions for reopening, indeed provides:

A determination, revised determination, decision, or revised decision *may* be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

(c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

20 C.F.R. § 416.1488 (emphasis added).

However, the discretionary nature of the reopening determination is not dispositive here. The key issue continues to be the ALJ's application of an erroneous legal standard in conjunction with his reopening analysis, and the error was problematic regardless of whether the decision to reopen was discretionary or mandatory. [5] In other words, the error lay *not* in the ALJ's refusal to reopen the 2016 application but in the ALJ's application of the mistaken standard.

## 2.   The ALJ Applied an Erroneous Legal Standard to his Reopening Evaluation

In his supplemental brief, the Commissioner concedes that "[a]ssuming . . . Plaintiff's initial request to reopen in February 2017, controls, it *may be* true that the March 2, 2016, claim could have been reopened for 'any reason.'" (Dkt. # 31 at 2 (emphasis added); *cf.* dkt. # 23 at 2 n.1.)

---

[5] Plaintiff's argument in her supplemental brief that the ALJ erred in his reopening determination because sufficient "new and material evidence" existed under the misapplied good cause legal standard misses the mark. (*See* dkt. # 32 at 2.) It also appears to be an attempt to raise in her supplemental brief an issue that Plaintiff failed to raise in her opening brief. (*See id.; cf.* dkt. # 18 at 2 & n.1) Here, the Court is considering the ALJ's discretionary reopening determination – a normally unreviewable decision – based specifically on the ALJ's application of an incorrect good cause legal standard when the appropriate standard was "for any reason." (*See* dkt. # 18 at 2) (argument raised by Plaintiff in opening brief). It is the ALJ's the application of the mistaken legal standard that is at issue – *not* the ALJ's analysis of the good cause standard. Accordingly, the Court declines to reach the new issue raised by Plaintiff in her supplemental brief.

The record demonstrates that Plaintiff's initial request to reopen her first application was indeed made in February 2017, which would have been within twelve months of the SSA's June 2016 administrative denial of the first application.[6] AR at 275, 3746-79; *see also* 20 C.F.R. § 416.1488(a). Accordingly, as the Commissioner acknowledged in his opposition brief, Plaintiff's request on the record at the hearing before ALJ Ross to reopen the first SSI application "appears to be a repeat of her initial request to reopen made in February 2017." (Dkt. # 23 at 2 n.1.) Therefore, the correct legal standard permitted reopening "for any reason" under subsection (a) – as opposed to for "good cause" as provided in subsection (b). *See* 20 C.F.R. § 416.1488. Given the language employed by ALJ Ross, there can be no doubt that ALJ Ross in fact applied an erroneous "good cause" standard as opposed to the "for any reason" standard. *See* AR at 2244; 20 C.F.R. § 416.1489(a)(1) (as referenced by 20 C.F.R. § 416.1488, defining "good cause" to include "new and material evidence").

### 3.    The ALJ's Mistake of Law Permits the Court to Review the ALJ's Discretionary Decision

An ALJ's decision not to reopen a prior benefits determination is discretionary and not itself a "final decision" within the meaning of the statute; therefore, it is generally not subject to judicial review. *Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997); *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985). However, the SSA's findings on discretionary decisions may be reversed if they are "tainted by legal error or if the denial of benefits is unsupported by substantial evidence." *Wainwright v. Secretary of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)). In other words, "[w]hen an ALJ has discretion to do something or not do it, his legal or factual errors in

---

[6] As noted, there is no evidence in the longitudinal record that the SSA ever ruled on Plaintiff's initial February 2017 request to reopen; and, in fact, the record suggests the contrary.

1  exercising that discretion are still a basis for reversal." *Joseph L. S. v. Kijakazi*, 2023 WL

2  5611408, at *6 (C.D. Cal. Aug. 30, 2023) (citing *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001)

3  (noting that since *Service v. Dulles*, 354 U.S. 363 (1957), "it has been well established that a

4  discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law

5  or other egregious error"), and *Eads v. Sec'y of Dep't of Health & Hum.* Servs., 983 F.2d 815,

6  817 (7th Cir. 1993) (Appeal Council's denial of review can be reviewed by the court when the

7  refusal rests on a mistake of law)).

8    Here, ALJ Ross' explicit mistake of law in applying a good cause standard to Plaintiff's

9  motion to reopen her first application justifies judicial review, and, as discussed in more detail

10  below, warrants remand for further proceedings for the ALJ to reconsider the decision to reopen

11  Plaintiff's March 2016 application under the correct legal standards.

12    **4.    Plaintiff has also Stated a Colorable Constitutional Claim that**
      **Permits the Court to Review the Discretionary Decision**

13

14    Alternatively, even if, as the Court has found above, an explicit mistake of law is not

15  itself sufficient grounds for review of a discretionary decision in the Ninth Circuit, the Court

16  nevertheless additionally finds that Plaintiff has asserted a sufficient "colorable" constitutional

17  claim that warrants review and remand for reconsideration. *See Califano v. Sanders*, 430 U.S. 99,

18  109 (1977) (a court can review a discretionary decision to not reopen a prior application if the

19  "denial of a petition to reopen is challenged on constitutional grounds") .

20    A claimant is entitled to judicial review of a discretionary decision of the Appeals

21  Council where she raises "any colorable constitutional claim of due process violation that

22  implicates a due process right either to a meaningful opportunity to be heard or to seek

23  reconsideration of an adverse benefits determination." *Evans*, 110 F.3d at 1483; *see also Rolen v.*
      *Barnhart*, 273 F.3d 1189, 1991 (9th Cir. 2001); *Udd v. Massanari*, 245 F.3d 1095, 1098 (9th Cir.

1    2001) ("[D]ue process requires that a claimant receive meaningful notice and an opportunity to

2    be heard before his claim for disability benefits may be denied."). "A challenge that is not

3    'wholly insubstantial, immaterial, or frivolous' raises a colorable constitutional claim." *Udd*, 245

4    F.3d at 1099; *Rolen*, 273 F.3d at 1191. It need not directly relate to the manner or the means of

5    the ALJ's decision denying review. *Evans*, 110 F.3d at 1482.

6           Plaintiff argues that the ALJ's application of the erroneous legal standard violated her

7    procedural due process rights. (Dkt. # 32 at 2.) In support, Plaintiff notes that the ALJ failed to

8    consider pertinent medical evidence, and argues that the Commissioner "essentially hid

9    significant evidence from [Plaintiff] which relates to the issue of whether she is disabled." (*Id.* at

10   3-4.) Plaintiff additionally argues the ALJ failed to fully and fairly develop the record. (*Id.*)

11          In his second supplemental reply brief, the Commissioner counters that Plaintiff's

12   "procedural irregularities" do not suffice to state a colorable constitutional claim.[7] (Dkt. # 34 at

13   1-2.) The Commissioner denies that the SSA "hid" evidence from Plaintiff, contending simply

14   that the missing medical opinion was not part of the particular claim before ALJ Ross or this

15   Court. (*Id.* at 2.) The Commissioner then essentially invites the Court to find that had ALJ Ross

16   in fact been provided with the opportunity to consider the missing medical opinion evidence

17   opinion, he would have found that it was consistent with his existing findings regarding

18   Plaintiff's RFC. (*Id.*)

19          The Court finds Plaintiff has asserted a sufficient claim for a colorable deprivation of

20   procedural due process. Specifically, the ALJ's failure to apply the correct "for any reason" legal

21   standard resulted in his failure to consider relevant medical evidence associated with Plaintiff's

22

23   _____

[7] Because the Commissioner's supplemental brief predated Plaintiff supplemental brief, the
Commissioner was unaware of the details of Plaintiff's constitutional argument at the time the
Commissioner filed his brief. (*See* dkt. # 31 at 3.) The Court thus gave the Commissioner yet another
opportunity to file a second supplemental brief, which he did. (Dkt. ## 33-34.)

1   March 2016 application and to adequately develop the record. This, in turn, raises a colorable

2   constitutional claim that Plaintiff was denied a meaningful opportunity to be heard on her first

3   application.[8] *See Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) ("The fundamental requirement

4   of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.")

5   (citation and quotation marks omitted); *see also Richardson*, 402 U.S. at 401 (holding that

6   applicants for social security disability benefits are entitled to due process in the determination of

7   their claims); *Gonzalez*, 914 F.2d at 1203 (holding that "[a]n applicant for social security benefits

8   has a property interest in those benefits"). Notably, the June 2016 opinions from examining

9   psychiatrist, Dr. Kirsten R. Nestler, and the June 2016 opinions from non-examining state

10  agency psychologist, Dr. Kristine Harrison, and physician, Dr. James Irwin, were among the

11  relevant evidence that ALJ Ross failed to consider.[9] *See* AR at 3748, 3754; *id.* at 2256-58; *see*

12  *also* dkt. # 32. The Commissioner's suggestion that the ALJ need not consider Dr. Nestler's

13  opinion begs the question because, had the ALJ applied the correct legal standards and reopened

14  the first application, the ALJ would have been required to consider the missing opinions.

15  Moreover, the Court declines the Commissioner's invitation to make findings regarding Dr.

16  Nestler's unconsidered opinion in the first instance. (*See* dkt. # 34 at 2.)

17          The Court further finds that the district court case cited by the Commissioner is

18  distinguishable. (*See* dkt. # 31 at 3 (citing *Hoover v. Colvin*, 2013 WL 6385925, at *3–4 (D. Or.

19  Dec.6, 2013) (due process does not require ALJ to reopen where there was no new information

20

21  [8] The Court rejects the Commissioner's suggestion in his first supplemental brief that Plaintiff was required to be unrepresented and/or to lack mental capacity in order to assert a colorable constitutional

22  claim. (*See* dkt. # 31 at 3.)  The Court further declines the Commissioner's invitation to step in and make factual findings regarding Plaintiff's mental capacity at the time she sought reopening in the first instance.

23  *See id.*

    [9] ALJ Erickson did not consider any of those opinions in conjunction with his April 2018 decision, either. AR at 2328. The only medical opinion ALJ Erickson considered was the opinion from Dr. Martin. *Id.*

1   presented relevant to barred claim)).) Here, unlike *Hoover*, ALJ Ross did not apply *res judicata*

2   to the SSA's June 2016 denial of Plaintiff's March 2016 SSI application because the relevant

3   periods associated with Plaintiff's first and second application did not entirely overlap as did the

4   relevant periods on the *Hoover* claimant's DIB applications at issue in that case. *See* AR at 2244;

5   2013 WL 6385925, at *1 (noting that the ALJ in *Hoover* found that *res judicata* applied

6   "because the period of disability alleged in the [claimant's] renewed [DIB] claims was entirely

7   within the period alleged in the [DIB] initial claims, and because [the claimant] presented no

8   new, material evidence to support a finding of disability").

9               **5.      ALJ Ross did not *De Facto* Reopen Plaintiff's First Application**

10          Although the Court finds above that review of the reopening decision is permissible

11   because Plaintiff has stated a sufficiently colorable constitutional claim, it, however, rejects

12   Plaintiff's arguments regarding the second asserted exception to review, and finds that ALJ Ross

13   did not *de facto* reopen the 2016 application.

14          Plaintiff argues that ALJ Ross *de facto* reopened the March 2016 application because he

15   considered "a substantial amount of medical evidence" that predated October 2016. (Dkt. # 32 at

16   2.) However, Plaintiff also simultaneously argues that ALJ Ross failed to consider important,

17   relevant medical evidence pertaining to the March 2016 application, including the June 2016

18   medical opinion from psychiatrist, Dr. Nestler, and that the SSA also failed to include the

19   missing evidence in the record and to inform Plaintiff of the evidence. (*Id.* at 3; AR at 3748 (June

20   2016 administrative decision references Dr. Nestler's opinion).)

21          The Commissioner counters that the ALJ here did not reopen the first application on a *de*

22   *facto* basis, but, instead, specifically declined to do so and only considered record evidence as it

23

1   related to the relevant period associated with the second application. (Dkt. # 31 at 4 (citing AR at

2   2244, 2253).)

3        The Court agrees with the Commissioner. As set forth above, ALJ Ross specifically

4   declined to reopen the prior application and to consider a period that predated October 13, 2016.

5   ALJ's Ross' limited and occasional reference to evidence that predated October 13, 2016, did not

6   undermine his other explicit findings such that it resulted in a *de facto* reopening of Plaintiff's

7   first application. As Plaintiff herself acknowledges, there was significant relevant evidence that

8   the ALJ did not consider. (*See* dkt. # 32.)

9              **6.      Remand for Further Proceedings is Warranted**

10       Plaintiff asks the Court to find that ALJ Ross *de facto* reopened the first application, to

11   proceed to the merits of her other arguments, to find that the ALJ erred, and to award benefits.

12   (Dkt. # 32 at 3.) However, this requested remedy rests largely upon Plaintiff's argument that ALJ

13   Ross *de facto* reopened the 2016 application, which, for the reasons above, the Court has

14   rejected.

15       The Commissioner contends that remand for further proceedings are required in the event

16   the Court concludes that review is permissible. (Dkt. # 31 at 4.) The Court agrees.

17       Here, ALJ Ross' mistake of law necessitates remand for further proceedings. On remand,

18   the ALJ is required to first reconsider Plaintiff's request to reopen Plaintiff's March 2016 SSI

19   application utilizing the correct "for any reason" legal standard. Assuming that the ALJ

20   determines that Plaintiff's first SSI application should be reopened, such reopening will require

21   the ALJ to issue a decision on three – as opposed to two – consolidated SSI applications (from

22   March 2016, October 2016, and June 2019). In doing so, the ALJ will be required on remand to

23   complete a new five-step sequential analysis, evaluating in the first instance additional relevant

evidence, including the June 2016 medical opinion evidence, and to reconsider the ALJ's findings at steps one through five in light of the expanded relevant period. Because the Court finds that further proceedings on remand will likely impact the other issues currently before the Court, it does not reach the additional issues on appeal.[10] *See Greenawalt v. Ricketts*, 784 F.2d 1453, 1456 (9th Cir. 1986) (holding that to "conserve judicial resources, [a court] should decline to reach the other issues" when remanding for other reasons that may impact the additional issues).

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ must reconsider Plaintiff's request to reopen her March 2016 SSI application utilizing the correct legal standards; and, if the application is reopened, the ALJ must further develop the record, and proceed to reevaluate Plaintiff's disability utilizing the requisite five-step analysis in light of additional relevant medical evidence and the expanded relevant time period.

Dated this 1st day of July, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[10] A ruling on the additional issues raised by Plaintiff on appeal is not warranted until the ALJ is able to first reconsider reopening the March 2016 application utilizing the correct legal standards.

ORDER - 16